### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**Case No. 1:24-cv-21196-WILLIAMS/GOODMAN**

NEDEVA COQ,

      Plaintiff,

v.

NCL (BAHAMAS), LTD., A
BERMUDA COMPANY

      Defendant.

_____/

### <u>REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS</u>

Nedeva Coq ("Coq" or "Plaintiff") was a passenger on the Norwegian *Epic*. On April 2, 2023, Plaintiff says, bed bugs latched onto her in her Stateroom, generating bites and skin rashes. [ECF No. 1, ¶ 11]. Defendant NCL (BAHAMAS), Ltd. ("NCL" or "Defendant") allegedly refused a request to move Plaintiff to a new Stateroom. *Id.* at ¶ 12. Coq also alleges that the bed bug infestation was transferred into the luggage she used on the cruise, causing her to dispose of the luggage (thereby causing economic damages). *Id.* at ¶¶ 15–16.

Alleging physical, emotional, and economic injuries, and seeking both compensatory and punitive damages, Coq filed a three-count Complaint against NCL. Count I is for negligence. Count II is for negligent infliction of emotional distress. Count III is for fraudulent concealment.

NCL filed a motion to dismiss, Plaintiff filed a response and NCL filed a reply. [ECF Nos. 14; 16; 18]. United States District Judge Kathleen M. Williams referred [ECF No. 15] the motion to the Undersigned for a report and recommendations.

NCL's motion is based on five grounds: (1) Count I commingles several theories into one count and is therefore an impermissible "shotgun pleading;" (2) both Counts I and II fail to allege any facts that NCL knew or should have known that Plaintiff's cabin had bed bugs; (3) Count II is duplicative of Count I; (4) the allegations do not justify punitive damages; and (5) Plaintiff did not adequately allege a fraudulent concealment claim under Florida law in Count III.[1]

For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Williams **grant** the motion and dismiss the Complaint (albeit **without** prejudice and with **leave** to file an amended complaint). At bottom, though, the Complaint is

---

[1]   NCL's motion raises both relevant and *inapplicable* arguments. After noting that Plaintiff is asserting three counts, it describes [ECF No. 14, p. 3] the pleading at issue as "Plaintiff's one-count Complaint." NCL's dismissal motion also contends that paragraph **20(k)** of the Complaint alleges that NCL was negligent "in other manners expected to be discovered during the course of ongoing investigation and discovery, all of which caused Plaintiff to sustain serious personal injuries." *Id*. But this is an incorrect contention (*i.e.*, there is no paragraph 20(k) in the Complaint). There is, however, a paragraph *24*(k) which raises the "in other manners" allegations.

Although these points are indisputably incorrect, the Undersigned does not believe that defense counsel was intentionally trying to mislead the Court. Rather, it seems as though defense counsel used a dismissal motion from *another* case as a template and neglected to remove the inapplicable, case-specific arguments and to customize the template motion for relevant use in the instant case.

problematic and inadequate because it is, from a substantive perspective, overly conclusory and devoid of sufficient specific factual allegations. In addition, it seeks punitive damages without alleging an adequate basis to establish exceptional circumstances of intentional wrongdoing and fails to state a claim for fraudulent concealment. The discussion below outlines the pleading problems.

## I.   Factual Background (*i.e.*, Plaintiff's Allegations)

The following allegations concern all three counts of Plaintiff's Complaint:

17.   Plaintiff seeks damages from Defendants for Defendant's [sic] negligent, wanton, reckless and intentional failure to properly maintain pest control aboard the Vessel and in the Stateroom and for allowing the bed bug infestation to occur and cause Plaintiff to suffer financial loss, personal injury, and emotional and mental distress.

18.   As a result of Defendant's [sic] failure to properly maintain the Vessel and Plaintiff' [sic] assigned Stateroom, Plaintiff was forced to endure filthy infestation of bed bugs. Defendants failed to disclose, inspect or warn Plaintiff of the presence of these filthy infestations aboard the vessel before Plaintiff purchased their [sic] cruise even though Defendants had actual and/or constructive notice of the infestations. Moreover, Defendants, by and through its agents, employees and managers, intentionally concealed the bed bug infestation from Plaintiff in order to induce them [sic] to purchase their [sic] cruise.

19.   As a direct and proximate result of the incident alleged herein and the negligent, wanton, willful, outrageous, reckless and intentional breaches of duties, acts and omissions of Defendants, Plaintiff sustained serious illness and severe physical and emotional injuries, including but not limited to severe skin rash, painful bed bug bites and personal injuries over the entirety of the body caused by bed bugs, aggravation of a pre-existing physical condition, emotional distress and mental suffering from insect bites, sleeplessness, inconvenience, humiliation, grief, frustration, anxiety and other symptoms, as well as property damage to clothing and personal belongings and out of pocket expenses. Plaintiff are [sic] informed and

believe [sic], and thereupon allege that some or all of the injuries will result in permanent damage, disability, pain, and suffering, causing general damages in an amount exceeding the jurisdictional requirements of this Court.

20.     As a further direct and proximate result of the incident alleged herein and the negligent, wanton, willful, outrageous, reckless and intentional breaches of duties, acts and omissions of Defendants, it was and continues to be necessary for Plaintiff to receive medical and/or psychological care and treatment and upon information and belief Plaintiff will be required to do so in the future. The cost of medical and/or psychological care and treatment past and future is not known at this time and Plaintiff allege [sic] as damages herein the amount of such cost according to proof at trial.

[ECF No. 1, pp. 4–5].

The following allegations[2] concern Count I's negligence theory:

22.     As the owner and operator of the Vessel, Defendants owed Plaintiff a duty to exercise reasonable care under the circumstances to avoid causing [sic] them personal injuries.

23.     Defendants had a further duty to warn Plaintiff of any dangerous conditions which were known to Defendants or could have been known to Defendants by reasonable inspection.

24.     On or about the above-mentioned dates, Defendants breached their duty of care to Plaintiff, and as art [sic] of a continuous course of conduct, so negligently and recklessly owned, operated, maintained, controlled, supervised and inspected the Vessel, its gear and equipment, and the areas of the Stateroom and its bedding aboard its [sic] vessel in a dangerous, unsafe, and defective condition, and negligently, wantonly, willfully, and outrageously:

---

[2]     The Undersigned is omitting the legal arguments and case law citations imbedded into this Count (and the other Counts), as they are legal argument and rhetoric, not factual allegations.

a.      failed to provide a safe, comfortable and sanitary Stateroom to Plaintiff;

b.      failed to regularly and properly inspect the vessel and the Stateroom to identify the existing bed bug infestation;

c.      failed to regularly and properly maintain the Stateroom and treat, exterminate and control the bed bug infestation;

d.      failed to warn Plaintiff of the bed bug infestation and dangerous and hazardous condition existing in their [sic] Stateroom of which Defendants either knew or should have known through the use of reasonable care and inspection;

e.      allowed, permitted and caused the Stateroom to be and remain in an unsafe, unhealthy and uninhabitable bed bug infested condition by failing to properly maintain and control the pest infestation aboard the vessel and in the Stateroom;

f.      failed to investigate and ascertain the cause of prior similar incidents so as to take measures to prevent their reoccurrence and/or eliminate the hazards, and more particularly Plaintiff' [sic] accident and subsequent injuries;

g.      failed to take any means or precautions for the safety of Plaintiff under the circumstances, then and there existing;

h.      failed to properly train, instruct and supervise employees to properly inspect and maintain passenger Staterooms, their beds, mattresses and linen;

i.      failed to promulgate and/or enforce adequate housekeeping polices [sic] and/or procedures so as to maintain reasonably safe conditions in passenger [S]taterooms free of bed bug infestation;

j.      failed to promulgate and/or enforce adequate housekeeping polices [sic] and/or procedures for its [sic] employees to properly warn of dangers; and

k.      in other manners expected to be discovered during the course of ongoing investigation and discovery, all of which caused Plaintiff to sustain serious personal injuries.

25.     Defendants had exclusive control of the Vessel.

26.     Defendants knew of and/or created the foregoing dangerous and unsafe conditions that caused Plaintiff' [sic] injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care and proper inspection and maintenance, knew of them or should have learned of them and corrected them and/or warned Plaintiff of them. Insofar as it relates to conditions that Defendants did not create, if any, knowledge was or should have been acquired through prior incidents or from its [sic] maintenance and inspections of the area where the Plaintiff's injuries occurred.

27.     Defendants engaged in wanton, willful, and outrageous conduct. The [sic] Defendant's wanton, willful, and outrageous conduct is evidenced by the acts and omissions enumerated herein and prior similar incidents which resulted in injuries. Plaintiff is informed and believe [sic] that Defendant [sic] had notice of bed bug infestations in its [sic] passenger [S]taterooms from prior similar incidents as evidenced by numerous online and social media complaints. Despite Defendant's [sic] knowledge of bed bug infestations and the foreseeable and severe health hazards, illness and injury they present to their passengers, Defendants failed to change their inspection and maintenance policies and procedures and failed to take reasonable steps to ensure passenger Staterooms are free of bed bug infestations prior to allowing guests to occupy them. Defendants further failed to inform the public and consumers, including Plaintiff, and concealed from them, the known defects hereinabove described. Defendant's [sic] conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference for the rights and physical well-being and the health and safety of its [sic] passengers exposed to such infestation and demonstrated willful, wanton and outrageous conduct that rises to the level warranting punitive damages.

*Id.* at 6–9.

6

The following allegations concern Count II's negligent infliction of emotional distress claim:

30.     Defendants, as the owner [sic] and operator [sic] of the Vessel, owed Plaintiff a duty to exercise reasonable care under the circumstances to provide them [sic] with safe and comfortable accommodations and avoid the infliction of emotional distress of its [sic] passengers.

31.     Defendants knew, or should have known, that its [sic] failure to exercise due care in the performance of providing Plaintiff with a safe and comfortable, and bed-bug free Stateroom would cause Plaintiff severe emotional distress.

32.     Defendants breached its [sic] duty by its [sic] failure to put Plaintiff on notice of the bed bugs in their [sic] Stateroom and to remediate the bed bug infestation contamination, and as hereinabove described.

33.     Defendant's [sic] conduct placed Plaintiff in the immediate risk of physical harm and in fact caused direct physical impact and injury, and as such Plaintiff was in the "zone of dangers" pursuant [sic] *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) and *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010).

34.     Defendant's [sic] careless, reckless and outrageous conduct as hereinabove alleged entitles Plaintiff's [sic] to punitive damages.

35.     As a direct and proximate result of Defendant's [sic] aforementioned conduct, Plaintiff have [sic] endured many sleepless nights and much emotional and mental distress, coupled with other physical conditions associated with severe mental and emotional distress.

36.     As a further direct and proximate result of Defendant's [sic] deplorable behavior and the consequences proximately caused by it, as hereinabove alleged, Plaintiff suffered severe emotional distress and mental suffering, all to their [sic] damage.

37.      As a further direct and proximate result of Defendant's [sic] negligent infliction of emotional distress, Plaintiff was injured and suffered damages as aforesaid.

*Id.* at 9–10.

The following allegations concern Count III's fraudulent concealment claim:

2.[3]    At all times relevant hereto, Defendants, through its [sic] employees and agents, were aware of the existence of bed bugs aboard the Vessel.

3.    At all [sic] relevant hereto, Plaintiff placed their [sic] trust and confidence in the [sic] Defendants that they [sic] would not be assigned a [S]tateroom that posed a danger to their [sic] physical health and wellbeing. This placed the [sic] Defendants in a position of influence over the Plaintiff.

4.    Defendants and its [sic] employees and agent intentionally failed to disclose the material facts of the bed bug infestation, a fact known to the Defendants that the [sic] Plaintiff could not have discovered before the injury occurred.

5.    Plaintiff did not know of the concealed fact of the bed bug infestation. Defendants intended to deceive the Plaintiff by concealing the fact of the bed bug infestation.

6.    The [sic] Plaintiff reasonably relied on Defendant's [sic] deception.

7.    The [sic] Plaintiff was harmed in the form of severe physical and emotional injuries.

8.    Defendants' concealment was a substantial factor in causing such harm.

9.    Defendant's [sic] wanton, willful and outrageous conduct as hereinabove alleged entitles Plaintiff's [sic] to punitive damages.

---

[3]    Instead of picking up with numbered paragraph 38, Plaintiff returned to paragraph 1. Therefore, numbered paragraph 1 of Count III should actually be paragraph 38. But the Undersigned is quoting from Plaintiff's actual Complaint. Given that Plaintiff likely will be filing an Amended Complaint (unless Plaintiff successfully files Objections to this Report and Recommendations and the first version remains), the Amended Complaint should use a correct, sequential and logical numbering system for the paragraphs.

> 10.     As a further direct and proximate result of Defendant's [sic] fraudulent concealment, Plaintiff was injured and suffered damages as aforesaid.

*Id.* at 10–11.

## II.     <u>Applicable Legal Standards and Analysis</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of

the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

To properly plead a claim for negligence under the General Maritime Law of the United States, a plaintiff must allege that: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to support each element of his direct liability negligence claims (as opposed to vicarious liability, which is not alleged here), including that the defendant had "actual or constructive notice of [a] risk-creating condition," at least where the risk is one commonly encountered on land and not clearly linked to nautical adventure. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022); *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022).

In *Newbauer*, the Eleventh Circuit affirmed a district court's granting of a cruise-

ship operator's motion to dismiss when the court found that Newbauer failed to provide any factual allegations to support her claim that Carnival Corp. had actual or constructive notice of the hazard which allegedly caused her injury. The plaintiff cruise-passenger alleged she was injured when she slipped and fell on a wet, slippery transitory substance on the cruise-ship's Lido deck. The passenger filed suit against the cruise-ship operator, alleging that it negligently failed to maintain the area and/or warn her of the condition.

In dismissing Newbauer's claims, the district court found that "[n]one of the [p]laintiff's allegations suggest Carnival was on constructive notice, let alone actual notice, of the hazard complained of because the [p]laintiff's complaint fails to satisfy applicable federal pleading standards under Federal Rule 8 and the *Iqbal/Twombly* standard." *Newbauer v. Carnival Corp.*, No. 20-23757-CIV, 2021 WL 723164, at *2 (S.D. Fla. Feb. 24, 2021), *aff'd*, 26 F.4th 931 (11th Cir. 2022). In affirming the district court's decision, the Eleventh Circuit similarly concluded that the passenger "failed to include any **factual** allegations that were sufficient to satisfy the pleading standard set forth in *Iqbal* and *Twombly* such that it is facially plausible that Carnival had actual or constructive notice of the dangerous condition." *Newbauer*, 26 F.4th at 935 (emphasis added).

More recently, the Eleventh Circuit again reaffirmed the principle that, "to survive [a] motion to dismiss" the plaintiff must "plead sufficient facts to support each element of his claim, including that [the defendant] had actual or constructive notice about the dangerous condition." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1095 (11th Cir. 2022). In

*Holland,* the plaintiff cruise-passenger filed suit against the cruise-ship operator, alleging he was injured when he slipped and fell while descending a glass staircase in a highly trafficked area of the ship. Holland alleged facts that made it possible that the cruise-line had notice of the allegedly dangerous condition, but he failed to provide factual allegations that plausibly suggested the cruise-line had notice, actual or constructive, of the dangerous condition. "Simply put, Holland's allegations do not cross the line from possibility to plausibility of entitlement to relief." *Id*. at 1096 (citing *Iqbal,* 556 U.S. at 678).

In the present case, Counts I and II of Plaintiff's Complaint allege that NCL knew or should have known that her cabin would have bed bugs that would bite her, but she does not provide any facts to support those claims. The Complaint contains only threadbare recitals of the elements and conclusory allegations which are insufficient to plead notice under the current Eleventh Circuit law established by *Newbauer* and *Holland*. *See generally Beck v. Carnival Corp.,* No. 23-24636, 2024 WL 2939074, at *3 (S.D. Fla. June 11, 2024) (granting cruise ship operator's motion to dismiss three counts of direct negligence in lawsuit filed by passenger who tripped and fell while walking down the vessel's gangway for failure to adequately allege notice because the allegations are "conclusory and speculative").

The Eleventh Circuit recently acknowledged its rules about the importance of properly alleging notice in personal injury lawsuits against cruise ships in *Patton v. Carnival Corp.,* No. 22-13806, 2024 WL 1886504 (11th Cir. Apr. 30, 2024) (affirming order

dismissing trip-and-fall complaint arising from an improperly affixed metal threshold extending across a highly trafficked hallway).

The *Patton* Court rejected the plaintiff's argument that her complaint should survive Carnival's dismissal motion because the relevant evidence is "wholly under the control of the cruise line," and, at the pleadings stage, all she "can reasonably know about the cause" of her injury is whatever observations she could make "at or shortly after" it happened. *Id*. at *3. Significantly, the *Patton* Court explained that the plaintiff "misunder[stood]" her pleadings burden, and elaborated that:

> She is *not* required, at the pleading stage, to *know* that Carnival had constructive knowledge of the threshold's dangerous condition. She only needed to **allege plausible facts** that Carnival had constructive notice of the dangerous condition. **So long as she had a good-faith basis, she could've made these allegations even though she did not have access yet to evidence supporting them.** *See* Fed. R. Civ. P. 11(b)(3) (allowing pleaders to make factual allegations that they believe "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). But, because the complaint doesn't allege plausible facts that Carnival had constructive notice of the raised threshold, we must affirm the dismissal of her complaint.

*Id.* (emphasis added).

To be sure, Plaintiff in the instant case alleges that she is "informed and believe [sic]" that NCL knew of bed bug infestations "from prior similar incidents as evidenced by numerous online and social media complaints." [ECF No. 1, ¶ 27]. But she does not provide any specific examples of such complaints. The notice allegation is therefore conclusory and relatively fact-free.

In its Reply, NCL outlines myriad issues which Plaintiff's conclusory allegation about notice do not address, and the Undersigned agrees that these points demonstrate why the sole sentence about purported notice is inadequate:

> What prior incidents are Plaintiffs [sic] referring to? When and where did they occur? Where are these online and/or social media complaints? When were they posted? Have they been authenticated or confirmed in anyway? How do Plaintiffs [sic] know that NCL was aware of those online and/or social media complaints? How do Plaintiffs [sic] know that they themselves [sic] did not bring the bed[ ]bugs with them [sic] onboard? These are just some examples of **facts** that Plaintiffs [sic] could have, but did not, allege in support of Counts I and II of their [sic] Complaint, and therefore those counts should be dismissed. *See Jones v. Carnival Corp.,* [23-23690,] 2024 U.S. Dist. LEXIS 125241[,] *12 (S.D. Fla. July 9, 2024) (dismissing complaint for failing to allege notice where "plaintiff failed to include non-conclusory factual allegations suggesting [the shipowner] had notice of the allegedly dangerous condition…").

[ECF No. 18, p. 3 (emphasis in original)].

So Counts I and II are defective for failure to adequately allege notice with plausible facts, as opposed to conclusory and speculative rhetoric. I, therefore, **recommend** that Judge Williams **dismiss** Counts I and II[4] for that reason.

Switching to another problem with the Complaint, the Undersigned notes that each of the three counts seeks punitive damages, but Defendant contends that the United States Supreme Court and the Eleventh Circuit (in a non-binding opinion) have previously explained that punitive damages are not available in personal injury-based

---

[4]     In its Reply, NCL withdrew its separate argument, without prejudice, that Count II is duplicative of Count I, so the Undersigned will not address that argument here.

passenger maritime claims. *See The Dutra Grp. v. Batterton*, 588 U.S. 358 (2019); *Eslinger v. Celebrity Cruises, Inc.*, 772 F. App'x 872 (11th Cir. June 28, 2019) ("Our court has held that plaintiffs may not recover punitive damages . . . for personal injury claims under federal maritime law.") (internal citations omitted) (citing *In re Amtrak Sunset Ltd. Train Crash, etc.*, 121 F.3d 1421, 1429 (11th Cir. 1997)).[5]

Some courts in our district have previously stricken a plaintiff-passenger's claims for punitive damages under far-more serious factual scenarios than the one involved here. *See Adams v. NCL (Bahamas) Ltd.*, Case No. 20-20438-CIV-UNGARO, ECF No. 18 (S.D. Fla., Apr. 6, 2020) (finding no valid claim for punitive damages against cruise ship operator where the plaintiff alleged two crewmembers drugged her drink without the plaintiff's knowledge and then raped and/or sexually assaulted her in a stateroom because the allegations did not rise to the level of "intentional misconduct" necessary for an "exceptional circumstance" in which punitive damages may be awarded); *see also Doe v. NCL (Bahamas) Ltd.*, Case No. 19-21486-CIV-ALTONAGA/Goodman, ECF No. 45 (S.D. Fla. Aug. 29, 2019) (striking punitive damages claim pursuant to the defendant's motion, which relied on *Eslinger*, concerning a minor cruise ship passenger who alleged she had

---

[5]    Because the Eleventh Circuit did not select *Eslinger* for publication, it is not binding precedent. It may, however, be "cited as persuasive authority." *See* Fed. R. App. P. 32.1 and 11th Cir. R. 36-2.

been sexually assaulted by the defendant's cabin steward).[6]

On the other hand, other courts within our district have held, in post-*Eslinger* decisions, that "punitive damages *may* be available under maritime law upon a showing of the defendant's intentional misconduct." *Hindsman*, 2020 WL 13369050, at *1 (emphasis added). The *Hindsman* Court held that,

> To demonstrate intentional misconduct for the purposes of recovering punitive damages, plaintiffs must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage."

*Id.* at *2 (citing *Tang v. NCL (Bahamas) Ltd.*, No. 20-cv-20967, 2020 WL 3989125, at *3 (S.D. Fla. July 14, 2020) (quoting *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010))).

Moreover, as noted, the *Hindsman* Court acknowledged that it was receding from its earlier decision in *Doe v. NCL (Bahamas) Ltd*, No. 19-cv-21486, where it struck a punitive damages prayer for relief in a maritime personal injury case.

Plaintiff's personal injury-based claims are governed by U.S. maritime law, and her claim of being bitten by bed bugs may not warrant punitive damages under binding Eleventh Circuit precedent. *See also Simpson v. Carnival Corp.*, No. 20-25253, 2021 WL 6428172, at *1 (S.D. Fla. Dec. 28, 2021) ("Binding Eleventh Circuit precedent unequivocally

---

[6]     But Chief District Judge Cecilia M. Altonaga later receded from this ruling in *Hindsman v. Carnival Corp.*, No. 19-23536, 2020 WL 13369050, *1, n.2 (S.D. Fla. Aug. 6, 2020).

precludes the recovery of punitive damages in a negligence case . . . for personal injuries under general maritime law.") (Scola, J.).

Plaintiff cites no post-*Dutra/Eslinger* case law that in any way undermines these rulings or their effect on this case.

Moreover, the one recent decision Plaintiff cites [ECF No. 16, p. 10], *Murrey v. Royal Caribbean Cruises Ltd.*, is either cited inaccurately or does not exist. The parties "Murrey" and "Royal Caribbean" do not appear together in any Westlaw case, and the case number provided, 19-21621-CIV, reveals (on CM/ECF) a case entitled *Espinoza v. Bulgari Corporation of America*, which was dismissed in 2019. The Westlaw citation (*i.e.*, 2020 WL 4724297), is also incorrect as it does not concern a case involving Murrey or Royal Caribbean, and an independent search by the Undersigned (and the law clerk working with me on this case) did not reveal *Murrey*.

Although, as noted, there are some courts within our district which have permitted punitive damages in maritime personal injury complaints, the permitted exception applies only when *intentional* wrongdoing can be demonstrated. *See McIlwain v. Royal Caribbean Cruises, Ltd.*, No. 22-cv-24025, 2023 WL 4117109 at *6 (S.D. Fla. June 20, 2023) (citing cases); *see also Escutia v. Carnival Corp.*, No. 23-24230, 2024 WL 1931703 at*18 (S.D. Fla. Mar. 13, 2024) ("there are some Courts in our District which have allowed punitive damages claims in personal injury cases under maritime law after *Eslinger*, but they have done so only in 'exceptional circumstances' upon a showing of 'intentional misconduct'

by a defendant.").

At bottom, there is **"an intra[-]district split** on whether punitive damages are allowed in maritime cases." *McIlwain,* 2023 WL 4117109, at *6 (emphasis added).

Setting aside the observation that punitive damages may not be available under *Eslinger*, which is not actually "the law" in our Circuit (as it is an unpublished opinion), pre-*Eslinger* authority could lead to the same conclusion here, as NCL contends that Plaintiff has not pled conduct on NCL's part which would warrant punitive damages.

Under the pre-*Eslinger* line of case law, a plaintiff may recover punitive damages only "where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'" *Lobegeiger v. Celebrity Cruises, Inc.,* No. 11-21620, 2011 WL 3703329 at *7 (S.D. Fla. Aug. 23, 2011) (quoting *Atlantic Sounding Co., Inc. v. Townsend,* 557 U.S. 404 (2009)); *Cf. Norwegian Cruise Lines, Ltd. v. Zareno,* 712 So. 2d 791, 794 (Fla. 3d DCA 1998) (in order to award punitive damages in a maintenance and cure case against the shipowner, the plaintiff must shows "substantive evidence of willful, callous, or egregious conduct" by the shipowner).

A court should strike or dismiss a punitive damages request when the substance of the allegations does not demonstrate that the alleged misconduct rises to the level necessary to support the remedy. *See Baker v. Carnival Corp.,* No. 06-21527, 2006 WL 3519093, at *5 (S.D. Fla. Dec. 5, 2006) (striking the plaintiff's request for punitive damages against a cruise ship operator in a rape case because the allegations did not rise to the

then applicable standard).

Similar to the *McIlwain* Court, the Undersigned "need not join in the dispute" over the issue of whether punitive damages are ever available in a cruise ship personal injury case because "even if precedent does not bar punitive damages here, the Complaint fails to make the necessary allegations." 2023 WL 4117109, at *6. To "demonstrate 'intentional misconduct' for the purposes of recovering punitive damages" Plaintiff must show that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Bonnell v. Carnival Corp.*, 13-CV-22265, 2014 WL 12580433, at *4 (S.D. Fla. Oct. 23, 2014) (citing *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010)).

Even if true, then Plaintiff's allegations are too vague and conclusory to support her conclusion that there was a "high probability" that she would be subjected to a bed bug attack in her Stateroom. Therefore, the Undersigned **respectfully recommends** that Judge Williams **strike** that prayer for relief. *See, e.g., Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350 (S.D. Fla. 2019) (finding that punitive damages sought by a plaintiff who fell off a rock wall should be stricken from the complaint because "plaintiff simply has not stated a valid claim for punitive damages under maritime law").

Because Plaintiff will have the opportunity to submit an Amended Complaint, she may again attempt to assert a punitive damages claim "**if** [she] has a good faith basis to

allege the necessary facts to support a punitive damages claim because of exceptional circumstances of intentional wrongdoing." *Escutia*, 2024 WL 19931703, at *19 (emphasis supplied). However, as explained in *Escutia,* "any punitive damages claim would need to be consistent with Rule 11 and meet the exceptional circumstances threshold required by those district courts which still permit punitive damages claims after Eslinger." *Id.*

Moving on to Count III, Plaintiff has not adequately alleged a fraudulent concealment claim.

In cruise ship personal injury actions, the Court looks to Florida law to determine the elements of fraud. *See generally Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir. 2000). ("[W]hen neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law.").

Under Florida law, a claim for fraudulent concealment is identical to a claim for fraudulent misrepresentation, with the additional element of a duty to disclose. *See R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. 1st DCA 2010) (citing *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th  2003); *Gutter v. Wunker,* 631 So. 2d 1117, 1118 (Fla. 4th DCA 1994).

The elements for fraudulent concealment are thus:

(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be disclosed; (3) the

defendant knew her concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation.

*Dunkel v. Hedman*, No. 3:15-CV-948-J-34PDB, 2016 WL 4870502, at *13 (M.D. Fla. Aug. 17, 2016), *report and recommendation adopted*, No. 3:15-CV-948-J-34PDB, 2016 WL 4765739 (M.D. Fla. Sept. 13, 2016).

"[A] cause of action does not lie for fraudulent concealment or non-disclosure except where there is a duty to disclose." *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-21722, 2007 WL 9701121, at *4 (S.D. Fla. Mar. 11, 2007) (citing *Cola v. Allstate Ins. Co.*, 131 F. App'x 134, 136 (11th Cir. Apr. 18, 2005)); *Broward Motorsports, LLC*, 2018 WL 1072211, at *3 (S.D. Fla. Feb. 27, 2018) (explaining that to state a claim, "a plaintiff must allege that . . . the defendant had a duty to disclose the material fact.").

In addition, a fraudulent concealment claim is subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity. *Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1077 (S.D. Fla. 2003) (dismissing fraudulent concealment claim for lacking the specificity required by Rule 9(b)). Thus, under Rule 9(b), "the circumstances of the fraud must be alleged with specificity, *i.e.*, the 'who, what, when, where and how' of the alleged fraud." *Id*. at 1073.[7]

But Count III, including the paragraphs which seem to be incorporated into Count

---

[7]    Plaintiff's Response cites to *Greenberg*. [ECF No. 16, p. 13]. Although Plaintiff cited this case on the issue of detrimental reliance, she did not discuss its conclusion that the allegations were not specific enough to comply with Rule 9(b).

III, does not allege that NCL had a duty to disclose, and the other allegations which might somehow link to that are conclusory and do not meet Rule 9(b)'s heightened pleading requirement.[8] *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment ").

The Undersigned **respectfully recommends** that Judge Williams **dismiss, without prejudice**, Count III's fraudulent concealment claim.

## III.   <u>Conclusion</u>

The Undersigned **respectfully recommends** that Judge Williams **grant** NCL's motion to dismiss and dismiss the Complaint, albeit **without prejudice** and with **leave** to amend. However, in the absence of new and dramatically more-serious facts, Plaintiff will not be permitted to replead her claim for punitive damages, as they are either not permitted in our Circuit in maritime personal injury cases (under one view of the split of authority) or the facts here are not intentional and extreme enough to warrant that damages theory. Of course, if Plaintiff has such substantial, intentional and exceptional

---

[8]   Numbered paragraph 23 alleges that NCL had a "duty to warn Plaintiff of any dangerous conditions which were known to Defendants or could have been known to Defendants by reasonable inspection." [ECF No. 1, p. 6]. And Paragraph 24(d) alleges that NCL breached its duty of care by "fail[ing] to warn Plaintiff of the bed bug infestation and dangerous and hazardous condition existing in their Stateroom of which Defendants either knew or should have known through the use of reasonable care and inspection." **But the allegations in paragraph 24 are not in Count III and were not incorporated into it.** *Id.* at 7.

facts, then she may include a punitive damages claim.

## IV.     <u>Objections</u>

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendations within which to file written objections, if any, with

the District Judge. Each party may file a response to the other party's objection within

fourteen (14) days of the objection. Failure to timely file objections shall bar the parties

from a *de novo* determination by the District Judge of an issue covered in the Report and

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions

contained in this Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*,

885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, August 8,

2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to:</u>
The Honorable Kathleen M. Williams
All Counsel of Record